# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3584

_____

United States of America

*Plaintiff - Appellee*

v.

Arthur Eugene Jennings, Sr., also known as Arthur Eugene Jennings

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: November 12, 2018
Filed: July 23, 2019

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Between 1993 and 2004 Arthur Jennings was incarcerated and served a sentence for second degree sexual abuse of a minor under Iowa state law. When released, Jennings was required to register every three months with the Iowa Sex Offender Registry. In 2008, Jennings was convicted in state court for failing to register as a sex offender. He was sentenced to probation and ordered to be placed

on the Iowa Sex Offender Registry for life. In 2016, Jennings was charged under 18 U.S.C. § 2250 for failing to register as a sex offender after it was discovered that he had not registered his latest address. Jennings pled guilty and was sentenced to a top-of-the-guideline range sentence of 30 months. At the sentencing hearing, the district court[1] imposed a no-contact order restraining Jennings from unapproved communication with his sister and adult son. Jennings now appeals this special condition. Additionally, Jennings makes an unpreserved claim that, because he was convicted of a sex offense before the passage of the Sex Offense Registry and Notification Act ("SORNA"), the retroactive application violates the nondelegation doctrine. We affirm.

## I. Background

At the time of his sentencing, Jennings had been abusing drugs and alcohol and was embroiled in a bitter domestic drama with his adult family. The source of the tension was rooted in Jennings's relationship with his son's ex-girlfriend, Valerie Long. At sentencing Jennings was living with Long and her two-year-old son. Jennings's son, Charles Spicer Sr., is the father of Long's son. At some point tensions boiled over and Jennings made threatening comments to Charles, as well as to Angelia, Jennings's sister. Jennings ultimately pled guilty to third-degree harassment of Charles in Iowa state court.

At sentencing, the district court discussed imposing a no-contact order restraining Jennings from initiating contact with Charles, Angelia, and Jennings's estranged wife, Darlene. The family dynamics of all involved are complex. At the time of the hearing Angelia was an active user of methamphetamine and cocaine. Charles had a history of marijuana, cocaine, and alcohol abuse. Darlene appeared to

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

be a relatively stable person. While Jennings admitted to the court that drugs and alcohol were central to many family fights, he objected to the no-contact order as to all three individuals. The district court eventually excluded Darlene from the no-contact order because Jennings had been corresponding with her from jail, and she had been helpful to his recovery process and in discovering Christianity. The condition at issue on appeal states:

> You must not initiate communication with Angelia Jennings or Charles Spicer Sr. (personal, electronic, mail, or otherwise) without the prior approval of the U.S. Probation Officer. If contact is approved, you must comply with any conditions or limitations on this contact, as set forth by the U.S. Probation Officer. Any unapproved direct contact must be reported to the U.S. Probation Officer within 24 hours.

## II.    Discussion

### A.    *Special Condition of Supervised Release*

"When a defendant properly objects at sentencing, we review special conditions for abuse of discretion." United States v. Deatherage, 682 F.3d 755, 757 (8th Cir. 2012) (citing United States v. Stults, 575 F.3d 834, 850 (8th Cir. 2009)). "District courts are normally afforded wide discretion in imposing terms of supervised release." United States v. Heidebur, 417 F.3d 1002, 1004 (8th Cir. 2005) (quoting United States v. Kent, 209 F.3d 1073, 1075 (8th Cir. 2000)).

Under 18 U.S.C. § 3583(d), special conditions of a sentence must "(1) be reasonably related to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical or other correctional needs and (2) involve no greater deprivation

of liberty than is reasonably necessary to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant's correctional needs."[2] United States v. Wilson, 709 F.3d 1238, 1240 (8th Cir. 2013) (cleaned up) (quoting United States v. Crume, 422 F.3d 728, 732 (8th Cir. 2005)).

Jennings challenges the no-contact order under both prongs. First, he claims that the order is both unnecessary and without evidentiary support. In support of this contention Jennings points out that he objected to the consideration of the text messages sent to Angelia, that they were not necessarily threatening and were actually sent to a different sister. Jennings fails to note, however, that the order is only partially based on the alleged threats. The court made plain during sentencing that the primary purpose of the condition was to facilitate Jennings's rehabilitation from drugs and alcohol. It is undisputed that Jennings had difficulty maintaining sobriety, and the record shows that Jennings has a long history of violent confrontations with family members, often involving the use of drugs or alcohol. Even assuming that the text messages were not threats and were sent to a different sister, there is sufficient evidence on this record to justify the order.

Jennings next contends the order imposes a greater deprivation of liberty than is reasonably necessary because it interferes with his constitutional right to maintain familial relationships. We have repeatedly upheld no-contact orders requiring defendants to seek permission from a probation officer before contacting their own minor children, even where there is no history or likelihood of abusive conduct. See United States v. Hobbs, 710 F.3d 850, 854 (8th Cir. 2013); United States v. Simons, 614 F.3d 475, 481–82 (8th Cir. 2010); United States v. Stults, 575 F.3d 834, 850–51 (8th Cir. 2009); United States v. Mark, 425 F.3d 505, 507–08 (8th Cir. 2005); Crume, 422 F.3d at 733–34; United States v. Vick, 421 F.3d 794, 795 (8th Cir. 2005) (per curiam). In this case, there is a long history of abusive conduct, and the no-contact

---

[2]The conditions must also be consistent with any pertinent public policy statements issued by the sentencing commission. 18 U.S.C. § 3583(d)(3).

order concerns only adult family members, with whom Jennings has at best strained relations. Given this history the special condition is well within the constitutional boundaries of 18 U.S.C. § 3583(d).

B.      *Nondelegation Doctrine*

Ordinarily, "[a] valid guilty plea . . . waives all non-jurisdictional defects and defenses." United States v. Limely, 510 F.3d 825, 827 (8th Cir. 2007) (citing United States v. Smith, 422 F.3d 715, 724 (8th Cir. 2005)). However, a guilty plea does not bar a defendant from challenging the constitutionality of the statute of conviction. Class v. United States, 583 U.S. ___, 138 S. Ct. 798, 803 (2018). Because Jennings did not preserve the issue by objecting or filing a pretrial motion to dismiss, we review this challenge under the plain error standard. Fed. R. Crim. P. 52(b). To succeed under the plain error standard, Jennings must show (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732 (1993) (quoting United States v. Young, 470 U.S. 1, 15, 105 S. Ct. 1038, 1046 (1985)). Jennings challenges the retroactive application of SORNA to sex offenders convicted before its 2006 passage as unconstitutional. This challenge fails because he cannot show an error, let alone a plain error.

In 2007, the Attorney General retroactively applied SORNA to sex offenders, acting under the authority delegated by Congress under 42 U.S.C. § 16913(d) (2006). We ruled on this issue in United States v. Kuehl, 706 F.3d 917 (8th Cir. 2013), concluding that "SORNA provides the Attorney General with an intelligible principle, and is a valid delegation of legislative authority." Id. at 920. After Jennings's trial concluded, the Supreme Court granted certiorari on this issue in Gundy v. United States, 17-6086. On June 20, 2019, the Supreme Court rejected the arguments relied upon by Jennings, stating "The question becomes: Did Congress make an impermissible delegation when it instructed the Attorney General to apply

SORNA's registration requirements to pre-Act offenders as soon as feasible? Under this Court's long-established law, that question is easy. Its answer is no." Gundy v. United States, 588 U.S. ___ , 139 S. Ct. 2116, 2129 (2019). Kuehl remains the binding law in this circuit.

## III.    Conclusion

We affirm the special condition imposed by the district court.

_____